[Civ. No. 639.   Fifth Dist.   Aug. 8, 1966.]

UNITED STATES FIRE INSURANCE COMPANY, Plaintiff and Respondent, v. TRANSPORT INDEMNITY COMPANY, Defendant and Appellant.

Cardozo, Trimbur & Nickerson, A. A. Cardozo, Jr., and Paul L. Martelli for Defendant and Appellant.

Bradford, Cross, Dahl & Hefner and Cavan Hardy for Plaintiff and Respondent.

CONLEY, P. J.—This judgment in declaratory relief determines which of two insurance companies is ultimately liable to a workman injured by the negligence of other workmen when removing telephone poles from a truck.

## The Facts

Arthur C. Walker was employed as a driver by Speedy Transport, Inc., a corporate carrier. The vehicle was employed in moving a load of telephone poles from Stockton to Sacramento by contract for Pacific Telephone & Telegraph Company. Arrangements had been made with the McLaughlin Draying Company to unload the poles at Sacramento, and that organization sent two of its employees, Charles W. Rose and Edward Geigle, to do the required work. Concededly, they acted negligently and, as a proximate result, Mr. Walker was injured. He filed a suit against various defendants, including the McLaughlin Draying Company, which was charged with having so "negligently unloaded" the truck as to cause the poles to strike and injure Walker. The list of parties in the complaint includes two fictitious defendants employed by McLaughlin Draying Company; it is conceded that Messrs. Rose and Geigle were the persons referred to.

At the time of the accident, three policies of insurance were outstanding. Two of them had been issued by Transport Indemnity Company to Speedy Transport, Inc.; they covered that carrier for liability arising out of the ownership, maintenance, or use of motor vehicles owned by it; by operation of law, the primary policy in the amount of $15,000 also extended coverage to anyone *using* such a vehicle with the permission of the owner and to any organization legally liable

for such use. (*Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359].) The second policy issued by Transport was an excess policy with a maximum limit of $285,000, which by its terms would not take effect, however, until exhaustion of any existing policy for primary liability. Under our view of the applicable law and the facts, the second, or excess, policy of Transport Indemnity Company is not of any moment in this case, and will not be mentioned again in this opinion.

The third policy was issued by the plaintiff, United States Fire Insurance Company, to McLaughlin Draying Company and covered, generally, that company's liability for negligence, including negligent acts of its employees. When the Walker complaint and summons were served upon McLaughlin Draying Company, that organization referred the case to the United States Fire Insurance Company and it, in turn, immediately notified Transport Indemnity Company of the filing of the suit and requested that company to defend the action pursuant to its duty under the policy first above described. Transport Indemnity Company responded promptly with a complete denial of coverage.

United States Fire Insurance Company thereupon filed the instant action against Transport Indemnity Company for declaratory relief. In due course, after the denial of coverage by Transport Indemnity Company, United States Fire Insurance Company initiated and consummated settlement of the Walker case, paying in compromise the sum of $11,250 to Mr. Walker; it expended besides the sums of $950, for the services of its attorneys in defending the Walker action and $278.07 for miscellaneous costs. The judgment in the present case is in favor of plaintiff and against defendant for the total of those sums, pursuant to the prayer of an amended and supplemental complaint reciting details of the settlement.

THE DUTY OF PAYING THE DAMAGES OF A TRUCK DRIVER INJURED THROUGH THE NEGLIGENT USE OF THE TRUCK BY PERSONS INSURED RESTS UPON THE INSURANCE COMPANY WHICH ISSUED THE PUBLIC LIABILITY POLICY ON THE TRUCK.

The leading case of *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.*, 142 Cal.App.2d 126 [298 P.2d 109], is directly in point; it holds that the burden of payment of damages to a person injured by the negligence of an insured person using the truck falls upon the insurance company which issued the public liability policy on the truck.

■ Were Charles W. Rose and Edward Geigle additional insureds under that policy? By reason of the holding in *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31, the answer is clearly, "Yes." While the primary insurance policy issued by Transport Indemnity Company purports to limit coverage to persons using only passenger-type vehicles, the *Wildman* case unquestionably extends the coverage to McLaughlin Draying Company and its employees.

The *Pleasant Valley* case, *supra,* first discussed and disposed of the basic problem in this state. There a truck driver drove a truck loaded with lima beans to a warehouse in Oxnard intending to unload the beans into the warehouse pits; he backed the truck onto a platform so that its front end could be sufficiently elevated to allow the beans to slide from the rear of the vehicle into the bin provided to receive them. The truck driver had been directed to the platform by an employee of the Pleasant Valley Lima Bean Growers and Warehouse Association, who had already placed two wooden blocks in front of two stationary blocks attached to the platform so that the truck's rear wheels would rest against the wooden blocks and allow the front of the truck to be elevated in such manner that the overhanging rear-end would be directly over the pit. The driver backed the truck into position, turned off the motor and got down from the vehicle, at which time the employee of Pleasant Valley, who was operating the machinery, raised the front end of the platform, and most of the load of beans slid into the pit. Some of them, however, were not dislodged, and the truck driver, standing at the rear of the truck with one leg over a pipe railing at the edge of the pit, tried to sweep out the remainder of the load. At that moment, the truck moved backwards, the rear wheels mounted the wooden blocks, the driver was pinned between the back of the truck and the concrete wall and he was severely injured. Cal-Farm Insurance Company had issued a policy to Brucker, the owner of the truck, and United States Fidelity and Guaranty Company a policy covering Pleasant Valley Lima Bean Growers warehouse operations. In a suit for declaratory relief, Cal-Farm Insurance Company was required to defend, on behalf of plaintiff, Pleasant Valley Lima Bean Growers and its employee, an action for personal injuries brought by the truck driver and to pay, within its policy limits, any judgment for the truck driver; the court held that the defendant's obligations under its policy to Brucker, who owned the truck, were

primary to the obligations of United States Fidelity and Guaranty Company, which had issued a comprehensive general liability insurance policy to plaintiff. The truck policy extended coverage to the negligent employee as a permissive user; the warehouse policy did not cover the negligent employee. Since the warehouse company was entitled to indemnity from its negligent employee, so, too, was its liability carrier by virtue of the doctrine of subrogation, and, as the negligent warehouse employee was covered only by the truck policy, that company had to bear the entire loss.

The principles of the *Pleasant Valley* case, *supra,* 142 Cal. App.2d 126, have since been consistently upheld in California. (*Entz* v. *Fidelity & Cas. Co.,* 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382].)

In the instant case, Transport Indemnity policy, issued to Speedy Transport, Inc., protected that company for liability arising out of the ownership, maintenance, or use of motor vehicles owned by it. The occupation of Speedy Transport, Inc., the named insured, is described in the policy as "motor carrier for hire," and the insuring agreement in the special endorsement attached to the policy reads: "To pay on behalf of the insured all damages which the insured shall become legally obligated to pay, including contractual obligations for damages which arise out of the occupation of the named insured as stated in the Declarations as a result of personal injury, bodily injury, sickness, disease or death to persons and for loss of or damage to property of others."

As we have seen, the policy extended coverage by operation of law to anyone using the vehicle with permission of the owner and to any organization legally liable for such use. *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31, held that Vehicle Code section 402, now renumbered as section 17150, and section 415, now renumbered as 16451, must be considered a part of every motor vehicle policy. The latter section, at the time of the accident, required such policy to insure the person named therein and any other person using or responsible for the use of the vehicle. McLaughlin Draying Company's two employees, Rose and Geigle, were using Speedy Transport's truck with its permission, and these two employees negligently caused Walker's injuries. By virtue of the principle of *respondeat superior,* the McLaughlin Draying Company was liable to Walker for their negligence and that company, consequently, was also covered by the Transport Indemnity policy.

■ The United States Fire Insurance Company policy issued to the McLaughlin Draying Company protected the latter for negligent acts of its employees, but the policy did not cover the two employees; they were not named in the policy, and the truck was not owned by the McLaughlin Draying Company. United States Fire Insurance Company, as insurer, was subrogated to the rights of the McLaughlin Draying Company against Rose and Geigle.

. Transport Indemnity Company is required to pay the entire loss for it is the only carrier insuring Rose and Geigle, who were ultimately responsible to Walker, unless, as argued by appellant, the exclusionary clause contained in the policy defeats the coverage.

THE EXCLUSIONARY CLAUSE IN THE TRANSPORT INDEMNITY COMPANY'S POLICY DOES NOT ELIMINATE THE LIABILITY OF THAT COMPANY IN THE ADMITTED CIRCUMSTANCES OF THIS CASE.

■ This exclusionary clause in the primary policy of Transport Indemnity Company reads as follows: ''This policy does not apply: 1. To any obligation for which the insured may be held liable under any Workmen's Compensation or Employers' Liability law, or to any liability arising out of any bodily injury, sickness, disease or death of any employee of the insured arising out of and in the course of his employment.''

The *Pleasant Valley* case, *supra,* 142 Cal.App.2d 126, involved a somewhat similar provision. That policy excluded coverage for bodily injury to any employee of the insured while engaged in the employment . . . of the insured and to any obligation for which the insured or any company as his insurer might be held liable under any workmen's compensation law. The opinion in that case stated that the exclusionary clause meant only that coverage did not apply to any one with the right to protection under workmen's compensation laws or, in other words, that the clause excluded coverage only in those instances in which the injured party was an employee of the *particular* insured—whether *named insured* or *additional insured*—seeking protection under the policy.

Appellant now argues that the insurance policy of Transport Indemnity has a broader exclusionary clause than that which was applicable in the *Pleasant Valley* case and that here coverage is excluded for any injury to any employee of an insured while in the course and within the scope of employment without regard to whether liability would attach to the

insured under workmen's compensation; appellant further maintains that an additional insured under the present policy has no greater rights than the named insured. By this reasoning it equates the position of Rose and Geigle to that of assignees standing in the shoes of an assignor. But this is not the law in California. Walker was not an employee of Rose or Geigle or the McLaughlin Draying Company; he was not entitled to workmen's compensation benefits from any of them. The California cases clearly hold that an exclusionary provision such as the foregoing would apply only to employees of an insured person who owes a liability to the plaintiff. Transport Indemnity Company ignores the case of *Campidonica* v. *Transport Indem. Co.*, 217 Cal.App.2d 403, 407 [31 Cal.Rptr. 735], in which its present contention was flatly rejected by the court. The *Pleasant Valley* case, *supra*, 142 Cal.App.2d 126, is no different from the present one in this respect. In the *Campidonica* opinion, *supra*, the court said that this precise contention was rejected in the *Pleasant Valley* case, where the court held that an exclusionary clause of this type applies only when the injured party was employed by the particular named insured, or an additional insured, who seeks the protection of the policy. (See also Hartwick, *How to Read a Liability Insurance Policy*, 13 Hastings L.J. 175.)

THE APPLICABLE LIMITS OF LIABILITY IN THE TRANSPORT INDEMNITY POLICY ARE NOT $5,000 BUT $15,000.

■ Transport Indemnity Company also contends that under the doctrine of *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31, the applicable coverage of its primary liability policy is only $5,000, even though the policy states its maximum limit as $15,000.

Section 402 of the Vehicle Code, now renumbered 17150, had to do with the liability of an owner for imputed negligence. Section 415, now renumbered 16451, provided at the time of the accident that an automobile policy shall insure the person named therein and any other person using, or responsible for the use of, a designated vehicle with permission of the owner, for the liability imposed by law arising from such use to the amount of $5,000 for injury to one person in one accident, $10,000 for injury to all persons as the result of any accident, and $1,000 for damage to property.

After the *Wildman* decision, this last numbered section was amended by raising the specified amounts, but appellant correctly points out that the effective date of such amendment

was July 1, 1959, and that at the time of the accident the sections in question provided for the lesser liability.

Transport Indemnity's policy states that it complies with the motor vehicle financial responsibility law, *but only to the extent of coverage and limits of liability required by the law,* and the policy also contains a restrictive endorsement which provides that the insured should have available to him in the aggregate, through any underlying policy and this policy, the minimum amounts of liability protection required by the law.

In line with this reasoning, Transport Indemnity contends that the coverage here is limited to $5,000, as that amount would satisfy the minimum requirements of the law. However, *Travelers Indem. Co.* v. *Colonial Ins. Co.,* 242 Cal.App.2d 227 [51 Cal.Rptr. 724], holds that such a contention is without merit and that insurance is afforded to the applicable limits of the specific policy involved. And in *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914], the court takes the same position; there one Leming was injured by the negligent operation of a truck driven by an employee of Oilfields Trucking Company named Mason. The truck was owned by Oilfields and insured by Transport Indemnity. Oilfields was engaged in operations with Phoenix Construction Company, which, in turn, was insured by Continental Casualty Company. A judgment of over $200,000 was rendered in favor of Leming against Mason, Oilfields and Phoenix. Continental did not extend coverage for trucking operations. Mason was primarily responsible for the loss. The Transport Indemnity policy was limited and did not contain the usual omnibus clause; it did state, however, that it extended its coverage to executive officers and directors of the named insured and to managing employees, and the court decided that Mason was a managing employee and was, therefore, fully covered by the Transport Indemnity policy. The *Continental* opinion construed the clause here in question by saying that such language cannot possibly mean minimum coverage or minimum limits, but it must be interpreted as providing full coverage. The court also stated with respect to the extent of coverage to Mason, that condition six of the basic Transport policy stated "to the extent of the coverage and limits of liability required by such law," and that such language must be given its full and inclusive, as opposed to a restrictive, meaning. Under this reasoning, the underlying policy of Transport Indemnity must be interpreted to provide maximum coverage, and the $15,000 maximum limit is appli-

cable. (See also *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.,* 201 Cal.App.2d 9 [20 Cal.Rptr. 73] ; *Pacific Indem. Co.* v. *Universal etc. Ins. Co.,* 232 Cal.App.2d 541, 543 [43 Cal.Rptr. 26].)

Speedy Transport, Inc. had to acquire by a Public Utilities Code endorsement limits of $15,000, because it was required to comply with the Highway Carriers' Act. (Pub. Util. Code, § 3631.)   And $15,000 rather than $5,000 is applicable.

IT WAS UNNECESSARY TO SUE ROSE AND GEIGLE AS A CONDITION PRECEDENT.

█ Even if the McLaughlin Draying Company and its employees, Rose and Geigle, are additional insureds under Transport Indemnity's policy, appellant argues that there exists a condition precedent to any action against it, namely, that a final judgment must first be obtained against the insured, and that there was no such judgment against Rose and Geigle. However, United States Fire Insurance Company correctly maintains that its policy in favor of McLaughlin Draying Company did not cover the latter's employees, Rose and Geigle, but only their employer, McLaughlin Draying Company. That company was not liable to Mr. Walker, except as a result of the principle of *respondeat superior.*   In view of such liability of McLaughlin Draying Company it had the right to bring an action against Rose and Geigle for the damages caused to it arising from their negligence. An insurance carrier compelled as United States Fire Insurance Company was to pay the loss of the McLaughlin Draying Company may recover the amount which it has paid by a suit against the negligent employees, having the equitable right of subrogation. (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423.)

It was stipulated that Rose and Geigle were negligent in letting the telephone poles fall from the conveyance, and causing the consequent injury to Walker; and that the two were employees of McLaughlin Draying Company, acting within the course and scope of their employment. There was no separate negligence by McLaughlin Draying Company apart from the doctrine of *respondeat superior.*

As Transport Indemnity Company flatly refused to defend the action brought by Mr. Walker, although it had the clear duty to do so, it cannot now question the reasonableness of the settlement made by United States Fire Insurance Company or the right of the persons in whose behalf settlement was made. McLaughlin Draying Company was legally responsible for its

employees' negligence; and because of its general indemnity insurance policy, United States Fire Insurance Company acted reasonably in compromising the Walker litigation. (See *Hartford Accident & Indem. Co.* v. *Transport Indem. Co.*, 242 Cal.App.2d 90 [51 Cal.Rptr. 168].)

In *Pacific Employers Ins. Co.* v. *Hartford Accident & Indem. Co.*, 228 F.2d 365, 371, the insurance companies had insured the employer of the negligent employee who caused the loss. Only the policy of Hartford covered the negligent employee and, consequently, the entire loss was placed upon it. The court stated the employer had never proceeded against the negligent driver for recovery based on his wrongful acts, but that such action was not necessary. There was no need for proceeding through the "tangle of claims" involved to secure a judgment based on ultimate liability; "the relief sought in a declaratory judgment action of this nature is broad enough to allow the court to settle all issues without forcing the parties to proceed separately against those who are liable."

UNITED STATES FIRE INSURANCE COMPANY DID NOT APPEAL AND IT, THEREFORE, HAS NO STANDING TO QUESTION ANY ADVERSE PROVISIONS OF THE JUDGMENT.

While the trial court's judgment required Transport Indemnity Company to pay the whole amount of the Walker settlement, it prorated the costs of litigation between the two insurers. Respondent now complains of this latter provision and it points out that *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 38 [17 Cal.Rptr. 12, 366 P.2d 455], holds that no insurer which deliberately breaches its obligation to the insured, as was done in this case, should be permitted to profit at the expense either of the insured, or of the insurer which discharges its obligation. However, United States Fire Insurance Company did not appeal from the instant judgment; and it is a sound general principle, supported by custom and reason, that a successful respondent who does not appeal cannot afterwards complain of any part of the judgment. (3 Witkin, Cal. Procedure (1954) Appeal, § 72, p. 2229; *Hardin* v. *Elvitsky*, 232 Cal.App.2d 357 [42 Cal.Rptr. 748].)

The judgment is affirmed.

Stone, J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.